UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE NEW MEXICO ENVIRONMENT DEPARTMENT | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. |
| MATADOR PRODUCTION COMPANY, | ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiffs, the United States of America, by authority of the Attorney General of the

United States and acting at the request of the Administrator of the United States Environmental

Protection Agency ("EPA"), and the New Mexico Environment Department ("NMED"), by

authority of the Attorney General of New Mexico, file this Complaint and allege as follows:

### NATURE OF ACTION

1.      This is a civil action against Matador Production Company ("Matador" or

"Defendant") pursuant to the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.*, and the New

Mexico Air Quality Control Act ("AQCA"), NMSA § 74-2-1 to -17.

2.       Plaintiffs seek injunctive relief and civil penalties under Section 113 of the

CAA, 42 U.S.C. § 7413, and Sections 74-2-12 and 74-2-12.1 of the AQCA, based on alleged

violations of the CAA and its implementing regulations, and the AQCA and its implementing

regulations, arising from operations at Matador's oil and natural gas production systems in Lea

and Eddy Counties, New Mexico.

3.     The Plaintiffs allege, subject to a reasonable opportunity for further investigation and discovery, that Matador has violated and/or continues to violate the following federal or state statutory or regulatory provisions in its oil and natural gas production activities, as set forth in this Complaint:

   a.  Section 111(e) of the CAA, 42 U.S.C. § 7431(e), and its implementing regulations;

   b.  The New Source Performance Standards ("NSPS") for Crude Oil and Natural Gas Facilities for which Construction, Modification, or Reconstruction Commenced after September 18, 2015, 40 C.F.R. Part 60, Subpart OOOOa ("NSPS Subpart OOOOa");

   c.  The operating permit requirements under Subchapter V of the CAA ("Title V"), 42 U.S.C. § 7661 *et seq.*, which are implemented and administered by NMED as codified in Part 20.2.70 of the New Mexico Administrative Code ("NMAC");

   d.  The New Mexico State Implementation Plan ("SIP"), including Section 74-2-7 of the AQCA and its implementing regulations at 20.2.72 NMAC (Construction Permits) and 20.2.73 NMAC (Notices of Intent); and

   e.  The provisions of NMED Air Quality Bureau General Construction Permit for Oil and Gas Facilities ("GCP-O&G"), issued on April 27, 2018 pursuant to 20.2.72.220 NMAC.

4.     Matador's failure to comply with the applicable requirements of the CAA and its implementing regulations, and the AQCA and its implementing regulations, has resulted in

unlawful emissions of volatile organic compounds ("VOCs"), a precursor to ground-level ozone

(often referred to as "smog"), as well as oxides of nitrogen ("$NO_x$") and carbon monoxide

("CO"). Ozone, $NO_x$, and CO are all criteria pollutants for which EPA has promulgated National

Ambient Air Quality Standards ("NAAQS") due to the pollutants' adverse effects on human

health and the environment. $NO_x$ is also a precursor to ozone formation. During the timeframes

relevant to this Complaint, air quality monitors in the areas of the State of New Mexico in which

the Matador facilities operate have registered rising ozone concentrations that exceed 95 percent

of the NAAQS for ozone.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the CAA claims pursuant to Section 113(b) of

the CAA, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

6.      This Court has supplemental jurisdiction over NMED's state law claims under

the AQCA pursuant to 28 U.S.C. § 1367 because the NMED claims are so related to the claims

in the United States' action that they form part of the same case or controversy.

7.      Venue is proper in this District under Section 113(b) of the CAA, 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because Defendant conducts business in this

District, and the violations that constitute the basis for this Complaint occurred in this District.

## AUTHORITY AND NOTICE

8.      The Attorney General has authority to bring this action on behalf of the

Administrator of the EPA under 28 U.S.C. §§ 516, 519 and Section 305 of the CAA, 42 U.S.C.

§ 7605.

9.      The New Mexico Attorney General has authority to bring this action on behalf of

the Secretary of NMED under Sections 74-2-12 and 74-2-12.1 of the AQCA.

10.     Notice has been given to Matador and to NMED, the appropriate air pollution

control agency in the State of New Mexico, as required by Section 113 of the CAA, 42 U.S.C.
§ 7413.

## DEFENDANT

11.    Matador is an oil and natural gas exploration and production company
incorporated in the State of Texas and registered to transact business as a Foreign Profit
Corporation in the State of New Mexico.

12.    Matador's corporate headquarters are located at 5400 LBJ Freeway, Suite 1500,
Dallas, Texas 75240.

13.    Matador owns and operates oil and natural gas production facilities in New
Mexico that remove oil, natural gas, and other liquids from subsurface rock formations; separate
the natural gas from the liquids; separate oil from water, and then store the separated liquids in
tanks until they are transported by pipeline or picked up by truck for sale or disposal.

14.    Matador is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C.
§ 7602(e), and Section 74-2-2(O) of the AQCA.

## CLEAN AIR ACT ENFORCEMENT HISTORY

15.    Matador entered into an Administrative Compliance Order on Consent with EPA
in 2019 to resolve alleged violations of the CAA and regulations issued thereunder by the State
of Texas at two oil and natural gas production facilities in Texas.

16.    On November 4, 2019, EPA issued a Notice and Finding of Violation to Matador
pursuant to Section 113(a)(3) of the CAA, citing violations of the CAA, NSPS Subpart OOOOa,
and the SIP at twenty oil and natural gas production systems in New Mexico.

17.    On November 4, 2019, NMED issued a Notice of Violation to Matador pursuant
to Section 74-2-12 of the AQCA, citing violations of the CAA, NSPS Subpart OOOOa, and the
SIP at twenty oil and natural gas production systems in New Mexico.

## FACILITIES

18.     Matador owns and/or operates hundreds of oil and natural gas production wells in Lea and Eddy Counties, New Mexico. The specific oil and natural gas exploration and production facilities that are the subject of this Complaint are identified in Appendix A to this Complaint.

19.     These facilities produce a mixture of oil, natural gas, and saltwater ("produced water"). This mixture flows up the well under pressure to the well-head at the surface and then to separation equipment that, depending on the characteristics of the well mixture, consist of one of more vessels, including a three-phase separator, heater-treater, and vapor recovery tower ("VRT"). The purpose of the separation equipment is to separate the effluent from the well into its constituent parts: hydrocarbon liquids, natural gas, and produced water.

20.     The oil and produced water, once separated from the natural gas, are temporarily held under pressure in the separation equipment until the liquids reach a set volume level, at which point valves open and the liquids flow into storage vessels, which are kept at or near atmospheric pressure.

21.     When oil is transferred from the separation equipment to a storage vessel, the pressure of the oil drops and some of the hydrocarbons in the oil, including VOCs, methane, and other pollutants such as toluene and benzene that are classified by EPA as hazardous air pollutants ("HAPs"), vaporize into a gaseous state. The liquids continue to emit vapors when temperatures fluctuate in the storage vessels and when liquids are being loaded into or out of the storage vessel. All of these emissions must be managed, both to prevent over-pressurization of the storage vessel and to prevent the release of uncontrolled gases, including VOC, methane, and HAP emissions, into the atmosphere.

22.     Storage vessels are equipped with openings called "thief hatches" or "pressure

relief valves" ("PRVs") that are designed to open (or "vent") as needed to relieve pressure or provide access to the tank contents, and to seal tightly when closed. Thief hatches and PRVs are collectively known as pressure relief devices ("PRDs"). Generally, properly maintained PRDs do not vent emissions to the atmosphere during normal operations, except when the PRD is actively being used (for example, for tank gauging, inspections, and maintenance).

23.     The storage vessels, control devices (*e.g.*, flares), vent lines, and all connections, fittings, PRDs, and any other appurtenances used to contain, collect, and convey vapors are collectively known as the Vapor Control System ("VCS"). A well-maintained VCS captures and routes vapors through a series of pipes or vent lines either to a flare or to process through a vapor recovery unit ("VRU"), where vapors are recycled or recovered.

24.     Compressors are engine-driven equipment used to increase pressure and route gas to the sales pipeline. Compressors are also used to facilitate removal of fluids from a well. A VRU is also a type of compressor.

25.     An insufficiently designed or poorly-maintained and operated VCS may result in the venting of VOC emissions during normal operations. The combustion of produced natural gas at heater-treaters, compressors, and flares results in emissions of $NO_x$ and CO.   Matador's operations at the facilities that are the subject of this Complaint have resulted in unlawful emissions of VOCs, $NO_x$, and CO.

## STATUTORY AND REGULATORY BACKGROUND

26.     Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1) states that one of the purposes of the CAA is "to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population[.]"

27.     Section 74-2-5(C) of the AQCA requires the New Mexico Environmental Improvement Board ("EIB") to adopt regulations to "attain and maintain national ambient air

quality standards and prevent or abate air pollution," as specified in the AQCA. Pursuant to this directive, the EIB has promulgated air quality regulations codified at Title 20, Chapter 2 of the NMAC.

## I.  The Clean Air Act's New Source Performance Standards

28.     Section 111(b) of the CAA, 42 U.S.C. § 7411(b), authorizes EPA to promulgate standards of performance applicable to "new sources" within categories of sources that cause "air pollution which may reasonably be anticipated to endanger public health or welfare." These regulations are referred to as New Source Performance Standards ("NSPS").

29.     A "new source" is any stationary source, the construction or modification of which is commenced after the promulgation of the standards of performance that will apply to such source. 42 U.S.C. § 7411(a)(2). A "stationary source" is a building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

30.     In 1979, the EPA listed "Crude Oil and Natural Gas Production" as a source category that contributes significantly to air pollution and for which standards of performance would be established. 44 Fed. Reg. 49,222 (Aug. 21, 1979).

31.     It is unlawful for owners or operators of any new source to operate in violation of the NSPS after the effective date of the standards. 42 U.S.C. § 7411(e).

32.     EPA has delegated authority to New Mexico to implement and enforce the NSPS in the State pursuant to Section 111(c) of the CAA, 42 U.S.C. § 7411(c). The federal NSPS regulations are incorporated by reference into the New Mexico Administrative Code at 20.2.77 NMAC. The NSPS and state provisions are  federally enforceable. 42 U.S.C. § 7111(c) (2).

### A.  40 C.F.R. Part 60, NSPS Subpart OOOOa

33.     In 2012, the EPA promulgated NSPS regulations for the crude oil and natural gas production, transmission, and distribution industry sector. 77 Fed. Reg. 49,542 (Aug. 16, 2012).

These standards were codified at 40 C.F.R. Part 60, Subpart OOOO ("NSPS Subpart OOOO"). 40 C.F.R. § 60.5360. NSPS Subpart OOOO applies to onshore affected facilities for which owners or operators commence construction, modification, or reconstruction after August 23, 2011, and on or before September 18, 2015. 40 C.F.R. § 60.5365.

34.     In 2016, the EPA amended the 2012 NSPS. 81 Fed. Reg. 35,898 (June 3, 2016). These standards were codified at 40 C.F.R. Part 60, Subpart OOOOa ("NSPS Subpart OOOOa"). 40 C.F.R. § 60.5360a. NSPS Subpart OOOOa applies to affected facilities for which owners or operators commence construction, modification, or reconstruction after September 18, 2015. 40 C.F.R. § 60.5365a.

35.     NMED was delegated authority for NSPS Subpart OOOO effective April 3, 2015, and for NSPS Subpart OOOOa effective October 12, 2018, for the State of New Mexico. *See* 80 Fed. Reg. 5475 (Feb. 2, 2015) and 83 Fed. Reg. 46107 (Sept. 12, 2018).

36.     All of the facilities at issue in this Complaint commenced construction, modification or reconstruction after September 18, 2015, and thus are potentially subject to NSPS Subpart OOOOa.

37.     Among the affected facilities subject to NSPS Subpart OOOOa are "storage vessel affected facilities." 40 C.F.R. § 60.5365a(e). A "storage vessel affected facility" is a single storage vessel, as defined in 40 C.F.R. § 60.5430a, with the potential for VOC emissions equal to or greater than 6 tons per year ("tpy") as determined according to 40 C.F.R. § 60.5365a(e)(1). The potential for VOC emissions must be calculated using a generally accepted model or calculation methodology, based on the maximum average daily throughput as defined in 40 C.F.R. § 60.5430a, determined for a 30-day period prior to the applicable emissions determination deadline specified in paragraphs (e)(2)(i)-(ii) of Section 60.5365a. The determination may take into account requirements under a legally and practicably enforceable

limit in an operating permit or other requirements established under a Federal, State, local, or tribal authority. 40 C.F.R. § 60.5365a(e)(1).

38.     Except as provided in paragraph (e)(3) of Section 60.5365a, the potential for VOC emissions must be calculated on an individual storage vessel basis and not averaged across the number of storage vessels at the site. 40 C.F.R. § 60.5365a(e)(2).

39.     For storage vessels constructed, reconstructed, or modified after November 16, 2020, the potential for VOC emissions may be averaged across the number of storage vessels at a storage vessel battery, where that battery meets all of the criteria specified in paragraphs (e)(3)(i) through (iii) of Section 60.5365a.

40.     Owners and operators of storage vessel affected facilities under NSPS Subpart OOOOa must demonstrate initial compliance by August 2, 2016, or within 60 days after startup, whichever is later. 40 C.F.R. § 60.5410a(h). No later than 90 days after the end of the initial compliance period, owners and operators must submit an initial report to the EPA that: identifies storage vessel affected facilities constructed, modified, or reconstructed during the reporting period and includes documentation of the VOC emission rate determination according to 40 C.F.R. § 60.5365a(e)(1); includes records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable; and includes a statement that the owner or operator has met the requirements of 40 C.F.R. §§ 60.5410a(h)(2)-(3). *See* 60.5420a(b)(6)(i)-(v).

**B.   VOC Standards for Storage Vessel Affected Facilities under NSPS Subpart OOOOa**

41.     NSPS Subpart OOOOa requires "[a]t all times, including periods of startup, shutdown, and malfunction, owners and operators shall maintain and operate any affected

facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions." 40 C.F.R. § 60.5370a(b).

42.     For each storage vessel affected facility, owners and operators must comply with the VOC standards in Section 60.5395a which require, inter alia, that it:

    a.   determine the potential for VOC emissions in accordance with Section 60.5365a(e); and

    b.   reduce VOC emissions by 95 percent within 60 days after startup.

43.     If the owner or operator of a storage vessel affected facility uses a control device or routes emissions to a process to reduce VOC emissions from a storage vessel affected facility pursuant to the 95 percent emissions reduction requirement of § 60.5395a(a), the owner or operator must (a) equip the storage vessel with a cover connected to a closed vent system, and (b) route VOC emissions to a control device or process in accordance with the following requirements of 40 C.F.R. § 60.5395a(b)(1):

    a.   the cover must meet the requirements of 40 C.F.R. § 60.5411a(b);

    b.   the closed vent system must meet the requirements of 40 C.F.R. §§ 60.5411a(c) and 60.5411a(d); and

    c.   the control device must meet the requirements of 40 C.F.R. § 60.5412a(c).

44.     Owners and operators of storage vessel affected facilities must demonstrate initial compliance with the requirements of Section 60.5410a(h) and 60.5410a(i); demonstrate continuous compliance with the requirements of Section 60.5415a(e)(3); and keep records as required by Section 60.5420a(b)(1) and (6), and Section 60.5420a(c)(5)-(8), (12)-(14), and (17), as applicable. 40 C.F.R. § 60.5395a(d).

45.     Pursuant to Section 60.5415a(e)(3), owners and operators of storage vessel affected facilities for which a control device is installed or which routes emissions to a process

to meet the requirement in Section 60.5395a(a)(2) must comply with Section 60.5416a(c) for each cover and closed vent system, including conducting monthly olfactory, visual, and auditory ("OVA") inspections for defects that could result in air emissions and maintaining records of the inspection results.

**C. <u>NSPS Subpart OOOOa Cover Requirements</u>**

46.     Pursuant to 40 C.F.R. § 60.5411a(b), owners and operators must comply with the following requirements for covers on storage vessel affected facilities under NSPS Subpart OOOOa:

    a.   the cover and all openings on the cover (*e.g.*, access hatches and pressure relief valves) shall form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel;

    b.   each cover opening must be secured in a closed, sealed position whenever material is in the unit, except during those times specified in 40 C.F.R. § 60.5411a(b)(2)(i)–(iv); and

    c.   each storage vessel thief hatch must be equipped, maintained, and operated with a weighted mechanism or equivalent, to ensure that the lid remains properly seated and sealed under normal operating conditions, including such times when working, standing/breathing, and flash emissions may be generated. The gasket material for the hatch must be selected based on the composition of the fluid in the storage vessel and weather conditions.

**D.  NSPS Subpart OOOOa Closed Vent System Requirements**

47.     Pursuant to 40 C.F.R. § 60.5411a(c), owners and operators must comply with the

following requirements for closed vent systems associated with storage vessel affected facilities

under NSPS Subpart OOOOa:

> a.  design the closed vent system to route all gases, vapors, and fumes emitted
>
> from the material in the storage vessel to a control device that meets the
>
> requirements specified in § 60.5412(c) and (d), or to a process; and
>
> b.  design and operate a closed vent system with no detectable emissions, as
>
> determined using OVA inspections.

48.     Pursuant to 40 C.F.R. § 60.5411a(d), owners and operators must also conduct an

assessment that the closed vent system is of sufficient design and capacity to ensure that all

emissions from the storage vessel affected facility are routed to the control device and that the

control device is of sufficient design and capacity to accommodate all emissions from the

storage vessel affected facility, and must have the assessment certified by an engineer in

accordance with the requirements in paragraphs (d)(1)(i) and (ii) of Section 60.5411a.

**E.  NSPS Subpart OOOOa Continuous Compliance Requirements**

49.     Pursuant to 40 C.F.R. § 60.5415a(e), for each storage vessel affected facility for

which a control device is used or emissions are routed to a process to meet the requirement of

Section 60.5395a(a)(2), owners and operators must demonstrate continuous compliance by: (i)

reducing VOC emissions as specified in Section 60.5395a(a)(2); and (ii) for each control device

installed to meet the requirements of Section 60.5395a(a)(2), demonstrating continuous

compliance with the performance requirements of Section 60.5412a(d) for each storage vessel

affected facility by:

> a.  complying with Section 60.5416a(c) for each cover and closed vent system;

and

    b.   complying with Section 60.5417a(h) for each control device; or

    c.   operating each closed vent system that routes emissions to a process as specified in Section 60.5411a(c)(2) and (3).

## II.  <u>Title V Operating Permit Requirements</u>

50.    Section 502 of the CAA, 42 U.S.C. § 7661a, establishes requirements for specified sources to obtain operating permits ("Title V operating permits") and sets forth the minimum elements for such permits..

51.    Section 503(c) of the CAA, 42 U.S.C. § 7661b(c), sets forth the requirement to submit a timely, accurate, and complete application for a Title V operating permit, and specifies information required to be submitted with the application.

52.    Section 504(a) of the CAA, 42 U.S.C. § 7661c(a), requires that each Title V operating permit include enforceable emission limitations and standards, a schedule of compliance, and other conditions necessary to assure compliance with applicable requirements, including those contained in a SIP.

53.    The CAA Title V operating permit program is implemented and administered by the States. Accordingly, Section 502 of the CAA requires each State to develop and submit for EPA approval a permit program meeting the requirements of Subchapter V of the CAA. 42 U.S.C. § 7661a.

54.    Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), and the implementing regulations at 40 C.F.R. § 70.7(b) provide that, after the effective date of the state Title V permit program, no person may violate any requirement of a Title V permit or operate a source subject to a Title V permit except in compliance with a Title V permit.

55.    EPA fully approved the New Mexico Title V operating permit program effective

as of January 27, 1997. 61 Fed. Reg. 60,032 (Nov. 26, 1996).

56.     The New Mexico air quality regulations implementing the Title V operating permit program are codified at 20.2.70 NMAC, but also remain federally enforceable.

57.     20.2.70.7 NMAC defines "major source" as it is defined under Section 501 of the CAA, 42 U.S.C. § 7661.

58.     Whether a facility is a "major source" is dependent, in part, on the source's "potential to emit" specified types and levels of air pollutants. *See* 20.2.70.7 NMAC.

59.     Pursuant to 20.2.70.7 NMAC, "potential to emit" is defined as the maximum capacity of a stationary source to emit any air pollutant under its physical and operational design. Any physical or operational limitation on the capacity of a source to emit an air pollutant, including air pollution control equipment and restrictions on the hours of operation or on the type or amount of material combusted, stored, or processed, shall be treated as part of its design if the limitation is federally enforceable.

60.     All sources that meet the definition of "major source" must obtain an operating permit. 20.2.70.200(A) NMAC.

61.     Pursuant to 20.2.70.201(A) NMAC, a source that is required to obtain an operating permit may operate after the time that is required to submit a timely and complete application only if:

> a.   the source is in compliance with the permit issued by NMED or EPA; or
>
> b.   a timely permit (including permit renewal) application has been submitted.

62.     Pursuant to 20.2.70.300 NMAC, any source that is required to obtain an operating permit must submit a timely and complete application within twelve months after the source commences operation as a Part 70 source.

III.  **The New Mexico State Implementation Plan**

63.     Section 108(a) of the CAA, 42 U.S.C. § 7408(a), requires the Administrator of the EPA to identify and prepare air quality criteria for each air pollutant, the emission of which may endanger public health or welfare, and the presence of which results from numerous or diverse mobile or stationary sources. For each such "criteria" pollutant, Section 109 of the CAA, 42 U.S.C. § 7409, requires EPA to promulgate standards for such pollutants in the ambient air that are requisite to protect the public health and welfare. Such standards, known as the NAAQS, are in the form of maximum allowable concentrations in the ambient air during a specified time period and are designed to protect the most sensitive individuals from harm from airborne pollutants.

64.     Pursuant to Sections 108 and 109 of the CAA, 42 U.S.C. §§ 7408 and 7409, EPA has identified six criteria pollutants: ozone, $NO_x$, sulfur dioxide, CO, particulate matter 10 microns or less, particulate matter 2.5 microns or less, and lead. *See* 40 C.F.R. Part 50. Unlike the other criteria pollutants, ozone is not directly emitted but instead is formed in the atmosphere through photochemical reactions involving VOCs and $NO_x$ in the presence of sunlight. Thus, VOCs and $NO_x$ are subject to regulation as part of the NAAQS for ozone. 40 C.F.R. §§ 50.6 to 50.11.

65.     Following promulgation of a new or revised NAAQS, EPA is required to designate all areas within each state as in attainment, nonattainment, or unclassifiable for the standard within two years. *See* 42 U.S.C. § 7407(d). The designation process entails collaborating with states and tribes and considering their recommendations, including proposed nonattainment boundaries based on data and information from air quality monitors or modeling. If the concentrations of a criteria pollutant in a geographic area meet or fall below the NAAQS, the area is designated as in "attainment" of the standard. Areas that exceed the NAAQS are

designated as "nonattainment" areas. Areas that do not have monitoring data available are designated as "attainment/unclassifiable" or "unclassifiable."

66.     Lea and Eddy Counties, New Mexico, where the relevant facilities owned and operated by Matador are located, are currently designated as in attainment of the NAAQS for all criteria pollutants. However, during the timeframes relevant to this Complaint, air quality monitors in both of these counties registered rising ozone concentrations that have exceeded 95 percent of the NAAQS for ozone.

67.     Section 110(a) of the CAA, 42 U.S.C. § 7410(a), requires each state to adopt and submit to the Administrator of the EPA a plan that provides for implementation, maintenance, and enforcement for each promulgated NAAQS in each air quality control region (or portion thereof). Each such plan, known as a SIP, must include enforceable emissions limitations and other control measures as well as a permit program to regulate the modification and construction of any stationary source within the areas covered by the plan as necessary to assure that NAAQSs are achieved. 42 U.S.C. § 7410(a)(2)(A).

68.     Pursuant to Section 113(a) and (b) of the CAA, 42 U.S.C. § 7413(a) and (b), upon EPA approval, SIP requirements are federally enforceable. Under 40 C.F.R. § 52.23, any permit limitation or condition contained within a permit issued under an EPA-approved program that is incorporated in a SIP is a requirement of the SIP and is federally enforceable under Section 113. The regulations that comprise the New Mexico SIP as approved by the EPA are set

forth in 40 C.F.R. § 52.1620(c). These regulations are codified at Title 20, Chapter 2 of the NMAC.

A.  **Relevant New Mexico SIP Provisions**

**20.2.73.200 NMAC – Notice of Intent Requirements**

69.     Pursuant to 20.2.73.200.A(1) and (2) NMAC, any owner or operator intending to construct or modify a stationary source that has a potential emission rate greater than 10 tpy of any regulated air contaminant is required to file a Notice of Intent ("NOI") with NMED.

70.     Pursuant to 20.2.73.200.A(4) NMAC, the NOI must be filed prior to the commencement of construction. If a construction permit is required, construction or modification cannot begin prior to the issuance of a permit under 20.2.72 NMAC. Alternatively, if no permit is required, construction or modification cannot begin until NMED issues a written determination that a permit is not required.

71.     Pursuant to 20.2.73.200.B NMAC, NOIs must include a description of the new facility or modification including all operations affecting air emissions; the nature and quantities of any regulated air contaminants the new source or modification will emit; and a description of any air pollution control device or method to be utilized.

**20.2.72 NMAC – Construction Permit Requirements**

72.     Pursuant to 20.2.72.200.A NMAC, construction permits must be obtained from NMED by any person constructing or modifying a stationary source which has a potential emission rate greater than 10 pounds per hour or 25 tons per year of any regulated air contaminant for which there is a National or New Mexico Ambient Air Quality Standard. All emitted regulated air contaminants with National or New Mexico Ambient Air Quality Standards are subject to permit review if this specified threshold is exceeded for any one regulated air contaminant. 20.2.72.200.A(1) and (2) NMAC. Determinations of applicability

shall take into account all federally enforceable emission limits and emission limits enforceable by NMED pursuant to the AQCA. *See* 20.2.72.7.Y (defining "potential emission rate"); *see also* 20.2.72.202.C(2) NMAC.

73.     All sources subject to Part 20.2.72 NMAC must file a construction permit application prior to the commencement of construction, modification, or installation. No construction, modification, or installation shall begin prior to the issuance of the permit, regardless of the anticipated commencement date. 20.2.72.200.E NMAC.

74.     Pursuant to 20.2.72.203 NMAC, any person seeking a construction permit must file a written application with NMED, following the instructions on the forms furnished by NMED, and the written application must contain the information specified in 20.2.72.203.A(1)-(15) NMAC.

75.     Construction permit applications must include all calculations and computations of regulated air contaminants the source will emit; a process flow sheet and site diagram of all components and locations of emissions to the atmosphere; a full description of the equipment to be used for air pollution control; and a description of the equipment or methods proposed to be used for emission measurement. 20.2.72.203.A(3), (7), and (9) NMAC.

**20.2.7.109 NMAC – Good Air Pollution Control Practices**

76.     Pursuant to 20.2.7.109 NMAC, the owner or operator of a source having an excess emission shall, to the extent practicable, operate the source, including associated air pollution control equipment, in a manner consistent with good air pollution control practices for minimizing emissions.

**NMED Air Quality Bureau General Construction Permit for Oil and Gas Facilities**

77.     Section 20.2.72.220 NMAC provides that NMED can issue general construction permits ("GCPs") that contain requirements for categories of sources that have similar

operations, processes, and emissions and can therefore be subject to the same or substantially similar requirements.

78.     Owners and operators of a source required to obtain a construction permit under Part 20.2.72 NMAC may apply to NMED to register under the terms of a GCP covering that source as an alternative to obtaining an individual construction permit under 20.2.72.200 NMAC.

79.     Owners and operators are subject to an enforcement action if they commence construction of a source prior to being approved by NMED for registration under a GCP, or if NMED determines that a source does not qualify for coverage under the GCP after construction commences. 20.2.72.220(C)(6) NMAC.

80.     Any term or condition imposed by NMED on a permit or permit revision is enforceable to the same extent as a regulation. 20.2.72.210(D) NMAC.

81.     Pursuant to the provisions of 20.2.72.220 NMAC, NMED issued the Air Quality Bureau General Construction Permit for Oil and Gas ("GCP-Oil and Gas") on April 27, 2018.

82.     The GCP-Oil and Gas is a general permit that authorizes an owner or operator to construct, modify, and operate an oil and gas facility under the conditions set forth in that general permit.

83.     Sources for which NMED has approved registration under the GCP-Oil and Gas are subject to all of the terms and conditions within the GCP-Oil and Gas. The facility shall operate as specified in the Registration Form. The emission limits and equipment specified in the Registration Form are federally enforceable, and shall become the terms and conditions of the Permit. *See* GCP-Oil and Gas Conditions A100.D, A100.F.

84.     To register under the GCP-Oil and Gas, owners and operators of sources must submit to NMED a Registration Form, which is considered the equivalent of a permit

application. The Registration Form must identify the control equipment and emissions limits for the source. Upon approval of the Registration Form by NMED, the source must operate as specified in the Registration Form, including the emissions limits specified for each regulated emissions unit. GCP-Oil and Gas Specific Condition A106.

85.     Upon approval of a GCP-Oil and Gas Registration Form by NMED, the owner or operator must construct, modify, and operate the source in accordance with all the GCP-Oil and Gas conditions, and all representations made in the Registration Form. GCP-Oil and Gas General Condition B101.A.

86.     GCP-Oil and Gas Specific Condition A205.B requires owners and operators who choose to comply with allowable emissions limits for storage tanks through the use of an NMED-approved control device, and/or routing the emissions to a process, to operate the control device and/or VRU as a closed vent system that captures and routes all emissions from tanks back to the process stream or to the control device, and does not vent to the atmosphere.

87.     GCP-Oil and Gas Specific Condition A205.B also requires monthly inspections of the piping from the tanks to the VRU or control device for defects that could result in air emissions, and subsequent repairs within 30 calendar days. Alternatively, the permittee may implement a program that meets the requirements of NSPS Subpart OOOOa, 40 C.F.R. § 60.5416a, if selected in the Registration Form.

88.     GCP-Oil and Gas Specific Condition A209.A requires monthly inspections of the VRU and associated piping from the controlled units, and blowcase vessels, for defects that could result in air emissions, and subsequent repairs within 30 calendar days. Alternatively, the

permittee may implement a program that meets the requirements of NSPS Subpart OOOOa, 40 C.F.R. § 60.5416a, if selected in the Registration Form.

89.     GCP-Oil and Gas Specific Conditions A205.B and A209.A require permittees to record the results of control device and VRU inspections chronologically and the name of the personnel conducting the inspection, and to note any maintenance or repairs that are required.

90.     GCP-Oil and Gas Specific Condition A209.A(1) requires permittees to demonstrate compliance with the allowable emission limits for VRUs by operating the VRU as a closed vent system that captures and routes all VOC emissions from units listed in the Registration Form back to the process stream or to a sales pipeline, and which does not vent to the atmosphere.

91.     Pursuant to GCP-Oil and Gas Specific Condition A207.B, for flares with a continuous pilot or an auto igniter, permittees shall continuously monitor the presence of a flare pilot flame using a thermocouple equipped with a continuous recorder and alarm, to detect the presence of a flame, or any other equivalent device approved by NMED. GCP-Oil and Gas Specific Condition A207.B also requires recordkeeping of all instances of alarm activation, actions taken to bring the flare into normal operating conditions, the name of the personnel conducting the inspection, and maintenance activities.  START HERE

92.     GCP-Oil and Gas General Condition B109.A requires permittees to maintain records to assure and verify compliance with the terms and conditions of the GCP-Oil and Gas and any other applicable permits that become effective after permit issuance. Such records shall include "a description of the physical condition of the equipment as found during any required inspection," in addition to the other enumerated required records. *See* GCP-Oil and Gas General Condition B109.A(8). Electronic records shall be maintained for a minimum of two years from

the time of recording and shall be made available to NMED personnel upon request. GCP-Oil and Gas General Condition B109.B.

93.    GCP-Oil and Gas General Condition B107.A. requires owners and operators of a source having an excess emission to comply with 20.2.7.109 NMAC and, to the extent practicable, operate the source, including associated air pollution control equipment, in a manner consistent with good air pollutant control practices for minimizing emissions.

## IV.  **Applicable Enforcement Provisions**

94.    Section 113 of the CAA, 42 U.S.C. § 7413, authorizes EPA to commence a civil action for injunctive relief and/or civil penalties against any person who has violated any requirement or prohibition of the CAA or regulations promulgated thereunder, or who has violated any applicable permit or implementation plan.

95.    Any person, including an individual, corporation, or partnership, as defined in CAA Section 302(e), 42 U.S.C. § 7602(e), who violates any requirement or prohibition in CAA Subchapter I, Part A is subject to, among other things, a civil penalty of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for violations that occurred after November 2, 2015, where penalties are assessed on or after January 6, 2023. *See* CAA Section 113(b), 42 U.S.C. § 7413(b), as modified by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, and most recently by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114–74 § 701, 129 Stat. 584, 599–601; *see* 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

96.    Sections 74-2-12 and 74-2-12.1 of the AQCA authorize NMED to commence a civil judicial action for appropriate relief, including civil penalties and injunctive relief, against

any person that has violated or is violating a requirement or prohibition of the AQCA, a regulation promulgated pursuant to the AQCA, or a condition of a permit issued under the AQCA.

97.     A person who violates a provision of the AQCA or a regulation, permit condition, or emergency order adopted or issued pursuant to the AQCA may be assessed a civil penalty not to exceed $15,000 for each violation for each day during any portion of which the violation occurs. NMSA § 74-2-12.1.

## GENERAL ALLEGATIONS

### I. Facility Inspections

98.     On April 16-18, 2019, inspectors from the EPA, NMED, and the New Mexico Oil Conservation Division inspected the twenty-one oil and natural gas production facilities listed in Table 1 ("Inspected Facilities").

| Table 1: Inspected Facilities | |
| --- | --- |
| Facility Name | GCP Registration or NOI Application Submitted at Time of Inspection |
| Anne Com 15 Facility | NOI |
| Dr. K Facility | NOI |
| Mallon 27 Fed Com No1H Facility | NOI |
| Mallon 27 Fed Com No2H Facility | NOI |
| Mallon 27 Fed Com No3H Facility | NOI |
| Miss Sue 202H Facility | NOI |
| Tiger 14 Facility | NOI |
| Tom Matthews 223H Facility | NOI |
| Tom Walters Facility | NOI |
| Zach McCormick Fed Com 226H Facility | NOI |
| Norris Thornton-1 Facility | Neither |
| B. Banker Facility | GCP |
| Charlie Sweeney Facility | GCP |
| Coleman Facility | GCP |
| Dr. Scrivner Facility | GCP |
| Guitar 10 Facility | GCP |
| Janie Conner Facility | GCP |
| Stebbins 19 Fed Com No123H Facility | GCP |

| Stebbins 20 Fed Facility | GCP |
|---|---|
| Stebbins 20/19 Fed Facility | GCP |
| Warren Facility | GCP |

99.     At each of the Inspected Facilities, inspectors documented the equipment onsite and noted the configuration of the vapor control system(s). Inspectors also made observations regarding the condition of the equipment and detected any emissions from the equipment using various techniques, including OVA methods, optical gas imaging technology ("OGI") that provides a qualitative indication of the amount of VOC and other hydrocarbons being emitted, a photo-ionization detector ("PID") that detects and measures VOC concentrations in the air, and a digital camera.

100.     Inspectors noted that all of the Inspected Facilities were generally similar, consisting of: one or more horizontally drilled wells that produce a mixture of oil, water, and gas; a horizontal three-phase separator dedicated to each well; one or more heater-treaters that serve to further separate oil, water, and gas; several oil and produced water storage vessels; one or more vapor recovery units; a flare or other combustion device; and one or more gas compressors.

101.     Inspectors noted that the Inspected Facilities were configured such that the vapors from the storage vessels are collected in the tank headspace and then routed through an interconnected closed vent system to a VRU or combustion control device. Each storage vessel and closed vent system was equipped with PRDs, which are designed to open and emit vapors when the pressure in the tanks and closed vent systems exceed the equipment set point.

102.     At the time of the inspection, Matador had submitted NOI applications for ten of the Inspected Facilities in Table 1. However, for nine of those Inspected Facilities, Matador failed to submit an NOI application prior to the start of construction, as required by 20.2.73.200.A(1) NMAC. The remaining Inspected Facility with a timely NOI, and five of the

24

nine Inspected Facilities with untimely NOIs, had emissions sources on site that Matador failed to include in the NOI, in violation of 20.2.73.200 NMAC. In each of the NOIs it submitted to NMED, Matador represented that NSPS Subpart OOOOa was applicable to the facility's storage vessels. Matador failed to submit an NOI application for the Norris Thornton-1 Facility.

103.    At the time of the inspection, Matador had submitted a Registration Form for coverage under the GCP-Oil and Gas for ten of the Inspected Facilities in Table 1. However, Matador failed to file a permit application prior to the commencement of construction, as required by 20.2.72.200.E NMAC, for eight of these Inspected Facilities. Three of these Inspected Facilities had emissions sources on site that Matador failed to include in the GCP Registration Forms for those facilities, in violation of GCP-Oil and Gas Specific Condition A100.F. For all ten of these Inspected Facilities, Matador represented in the Registration Forms that all VOC emissions from the storage tanks and VRTs (where constructed) are captured and routed to process through a VRU or to a flare. With respect to the allowable hourly and yearly VOC emissions limits for the storage tanks identified in the Registration Forms, Matador represented that emissions were "not expected."

104.    During the inspections, federal and state inspectors observed and documented numerous indicia of unlawful emissions and evidence of violations of the applicable state and federal regulations, including, but not limited to:

> a.   at eighteen of the Inspected Facilities, inspectors observed uncontrolled VOC emissions from the PRDs on the storage vessel covers and/or from the closed vent systems, indicating that the covers on the storage vessel openings were not secured as required, the closed vent system was not properly designed and operated, and/or the storage vessel thief hatches were not maintained and operated to ensure that the lid remains sealed and seated under normal

operating conditions, as required. These PRD emissions were continuous and detectable during the inspection by way of OVA observations and use of a PID and OGI;

b. at two of the Inspected Facilities, inspectors observed uncontrolled VOC emissions from an unlit flare;

c. at twenty of the Inspected Facilities, inspectors observed evidence of historical venting of emissions due to poorly maintained equipment, such as the build-up of debris or residue on equipment and the presence of corrosion and/or condensation; and

d. at nine of the Inspected Facilities, inspectors observed the operation of emissions sources that had not been identified to NMED by Matador in any NOI application or GCP-Oil and Gas Registration Form.

## II.  Flyover Surveillance

105.    On September 30, 2019, and October 3, 2019, EPA conducted helicopter flyovers of the six Matador Facilities listed in Table 2 ("Flyover Facilities") in order to detect and observe emissions using OGI.

| Table 2: Flyover Facilities | |
| --- | --- |
| Facility Name | GCP Registration or NOI Application at Time of Flyover |
| Brantley State Com 13 24 27 RB 205H | NOI |
| Charlie Sweeney Facility* | GCP |
| Dr. Scrivner Facility* | GCP |
| Garrett State Comm 111H | NOI |
| General Kehoe 02 24S 28E RB 217H | GCP |
| Tony La Russa State Com #202H | GCP |
| *Also an Inspected Facility | |

106.    During this flyover surveillance, EPA contractors observed excess emissions emanating from the storage tank control system PRDs at each of the six Flyover Facilities.

### III. Information Request

107.    On January 6, 2020, Matador responded to EPA's November 4, 2019 request for information made pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, pertaining to all of Matador's facilities in New Mexico, including the Inspected Facilities and the Flyover Facilities. In its response ("114 Response"), Matador provided the following information for all of the Inspected Facilities: actual emissions data (where applicable); actual production data; operating and maintenance records, including OVA inspection records, annual reports, design and capacity assessment records; notices of intent; and construction permit registrations. The 114 Response also indicated that Matador had submitted GCP Registrations and NOI applications to NMED for several of the Inspected Facilities and Flyover Facilities following the inspections.

108.    On the basis of the information provided in the 114 Response, the Plaintiffs estimated storage vessel-specific and site-wide annual and hourly emissions of VOC, $NO_x$, and CO for each of the Inspected Facilities and the Flyover Facilities. The Plaintiffs compared these estimates to the potentially applicable regulatory requirements under both Federal and New Mexico State law, as well as to the emission limits contained in the facility-specific permit registrations.

109.    Based on these emissions estimates, the Plaintiffs determined the following:

    a.    the storage vessels located at twenty-four of the Inspected Facilities and Flyover Facilities have per-vessel VOC emissions greater than 6 tpy and satisfy other regulatory criteria, making such facilities "storage vessel affected facilities" as that term is used in 40 C.F.R. Part 60, Subpart OOOOa;

    b.    the Norris Thornton-1 Facility, for which Matador had not submitted an NOI application to NMED, had facility-wide emissions of $NO_x$ and CO greater

than 10 tpy, making such facility subject to the NOI requirements in 20.2.73 NMAC;

c.  seven of the Inspected Facilities for which Matador had neither submitted an individual construction permit application nor registered for a GCP had facility-wide emissions of $NO_x$ or CO greater than 25 tpy or VOC emissions greater than 100 tpy, making such facilities subject to the construction permit requirements in 20.2.72 NMAC;

d.  each of the ten Inspected Facilities for which Matador had already submitted a Registration Form for the GCP-Oil and Gas had hourly and/or annual emissions in excess of the allowable emissions in the applicable Registration Forms; and

e.  thirteen of the Inspected Facilities and Flyover Facilities for which Matador had not applied for an operating permit had facility-wide emissions of CO, $NO_x$, or VOC in excess of 100 tpy, making such facilities subject to the operating permit requirements at 20.2.70 NMAC.

110.  Matador's 114 Response further revealed that:

a.  at nineteen of the Inspected Facilities, Matador's OVA Inspection records were either incomplete, missing, or failed to reflect the emissions that inspectors observed, in violation of 40 C.F.R. § 60.5416a(c)(1)-(2) or GCP-Oil and Gas Condition A205.B;

b.  at twenty of the Inspected Facilities, Matador failed to conduct an assessment that demonstrates that the closed vent system is of sufficient design and capacity to accommodate all emissions and have it certified, as required by 40 C.F.R. § 60.5411a(d)(1);

c.  at six of the Inspected Facilities and at two of the Flyover Facilities, Matador's calculations of uncontrolled VOC emissions were averaged across multiple storage vessels in a battery, in a manner inconsistent with 40 C.F.R. § 60.5365a(e)(1);

d.  at all ten of the Inspected Facilities for which Matador had submitted a GCP-Oil and Gas Registration Form at the time of the inspection, Matador's data loggers were either malfunctioning or were not properly set up, resulting in an absence of pilot monitoring data;

e.  at all ten of the Inspected Facilities for which Matador had submitted a GCP-Oil and Gas Registration Form at the time of the inspection, the runtime records of the VRUs were not being kept or were incomplete.

## CLAIMS FOR RELIEF

### Claim 1: Violations of NSPS Subpart OOOOa in the State of New Mexico

111.   Paragraphs 1 through 110 are incorporated herein by reference.

112.   The storage vessels at the facilities listed in Appendix 1 and potentially other facilities (subject to a reasonable opportunity for further investigation and discovery) are oil and natural gas production facilities owned and/or operated by Matador in the State of New Mexico and are subject to the VOC standards for storage vessel affected facilities in NSPS Subpart OOOOa, set forth at 40 C.F.R. § 60.5395a.

113.   For each of the 1A Facilities indicated in Appendix 1, dating from at least the Inspection Date and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated the storage vessel cover requirements of 40 C.F.R. § 60.5411a(b) because the covers and/or openings on the storage vessel covers (e.g., access hatches, sampling ports, PRDs, or gauge wells) did not form a continuous impermeable barrier

over the entire surface area of the liquid in the storage vessels, as required by 40 C.F.R. § 60.5411a(b)(1); the storage vessel cover openings were not secured in a closed, sealed position, as required by 40 C.F.R. § 60.5411a(b)(2); and/or the storage vessel thief hatches were not maintained and operated to ensure that the lid remains properly seated and sealed under normal operating conditions, including such times when working, standing/breathing, and flash emissions are generated, as required by 40 C.F.R. § 60.5411a(b)(3).

114.    For each of the 1A Facilities indicated in Appendix 1, dating from at least the Inspection Date and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(c) because the closed vent systems were not designed to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in 40 C.F.R. § 60.5412a(c) and (d), or to a process, as required by 40 C.F.R. § 60.5411a(c)(1); and the closed vent systems were not designed and operated with no detectable emissions as determined using OVA inspections, as required by 40 C.F.R. § 60.5411a(c)(2).

115.    For each of the 1B Facilities indicated in Appendix 1, dating from at least the Inspection Date and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated the storage vessel closed vent system requirement of 40 C.F.R. § 60.5411a(d) by failing to conduct an assessment that each closed vent system is of sufficient design and capacity to ensure that all emissions from the facility are routed to the control device and that the control device is of sufficient design and capacity to accommodate all emissions from the facility, and have it certified by a qualified professional engineer or in-house engineer.

116.    By failing to comply with the storage vessel cover and closed vent system

requirements of 40 C.F.R. § 60.5411a(b), (c) and/or (d), Matador violated the VOC standards for storage vessel affected facilities at 40 C.F.R. § 60.5395a(a)(2) and (b)(1) at each of the 1A and 1B Facilities indicated in Appendix 1, and violated the requirements at 40 C.F.R. §§ 60.5395a(d)(2) and 60.5415a(e)(3) at each of the 1A Facilities indicated in Appendix 1.

117.    For each of the 1C Facilities indicated in Appendix 1, dating from at least the month prior to the Inspection Date and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated OVA inspection requirements for closed vent systems and covers at 40 C.F.R. § 60.5416a(c)(1) and (2) because Matador's inspection records were either incomplete, missing, or failed to reflect the emissions that inspectors observed.

118.    By failing to comply with the OVA inspection requirements for closed vent systems and covers at 40 C.F.R. § 60.5416a(c)(1) and (2), Matador violated the VOC standards for storage vessel affected facilities and continuous compliance requirements set forth at 40 C.F.R. §§ 60.5395a(d)(2) and 60.5415a(e)(3) at each of the 1C Facilities indicated in Appendix 1.

119.    For each of the 1D Facilities listed in Appendix 1, Matador violated the emissions determination requirement at 40 C.F.R. § 60.5365a(e) because Matador did not calculate the potential for VOC emissions on an individual storage vessel basis, as required by 40 C.F.R. § 60.5365a(e)(2), and instead averaged across the number of storage vessels at the site.

120.    By failing to comply with the emissions determination requirement at 40 C.F.R. § 60.5365a(e), Matador violated the VOC standards for storage vessel affected facilities set forth at 40 C.F.R. § 60.5395a(a)(1) at each of the 1D Facilities listed in Appendix 1.

121.    Each of the violations alleged in Paragraphs 113 through 120 are violations of

Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

122.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Matador is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

123.     Pursuant to Section 74-2-12.1(A) of the AQCA, Matador is liable for civil penalties of up to $15,000 per day for each violation.

## Claim 2: Failure to Submit NOI to NMED

124.     Paragraphs 1 through 110 are incorporated herein by reference.

125.     The facilities listed in Appendix 2 have potential emission rates of VOC greater than 10 tpy, requiring Matador to file an NOI with NMED prior to the commencement of construction pursuant to 20.2.73.200 NMAC.

126.     For each of the facilities listed in Appendix 2, dating from the start of construction and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador failed to submit an NOI, failed to submit an NOI prior to the start of construction, or failed to submit an NOI in a manner that reflects all emissions sources, in violation of 20.2.73.200.A(1) and (4) NMAC and 20.2.73.200.B NMAC.

127.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Matador is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–

601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

128.    Pursuant to Section 74-2-12.1(A) of the AQCA, Matador is liable for civil penalties of up to $15,000 per day for each violation.

### Claim 3: Failure to Obtain Construction Permit

129.    Paragraphs 1 through 110 are incorporated herein by reference.

130.    The facilities listed in Appendix 3 have potential emission rates of $NO_x$ or CO greater than 25 tpy or 10 lb/hour, requiring Matador to obtain a construction permit under 20.2.72 NMAC. 20.2.72.200.A(1) NMAC.

131.    For each of the facilities listed in Appendix 3, dating from the start of construction and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador failed to obtain a construction permit prior to construction or failed to obtain a construction permit that reflects all emissions sources, in violation of 20.2.72.200.A and E, and 20.2.72.203.A NMAC.

132.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Matador is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

133.    Pursuant to Section 74-2-12.1(A) of the AQCA, Matador is liable for civil penalties of up to $15,000 per day for each violation.

### Claim 4: Failure to Obtain NMED Title V Operating Permit for Major Sources Subject to 40 C.F.R. Part 60, Subparts OOOO or OOOOa

134.    Paragraphs 1 through 110 are incorporated herein by reference.

135.    The storage vessels at the facilities listed in Appendix 4 have a potential to emit

at least 100 tpy of VOC, NO$_x$, or CO and are "major sources," as defined under Section 501 of the CAA, 42 U.S.C. § 7661, and 20.2.70.7.R NMAC, requiring Matador to obtain an operating permit under 20.2.70 NMAC.

136.    For each of the facilities listed in Appendix 4, dating from the start of construction and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador failed to submit an application for an operating permit within twelve months of the commencement of operation as a major source, as required by 20.2.70.300.A and B NMAC.

137.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Matador is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

138.    Pursuant to Section 74-2-12.1(A) of the AQCA, Matador is liable for civil penalties of up to $15,000 per day for each violation.

## Claim 5: Violations of the GCP-Oil and Gas

139.    Paragraphs 1 through 110 are incorporated herein by reference.

140.    The facilities listed in Appendix 5 have been registered and approved by NMED under the GCP-Oil and Gas.

141.    For each of the facilities listed in Appendix 5, dating from at least the Inspection Date and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated the requirement in GCP-Oil and Gas Specific Conditions A205.B and A209.A(1) to design and operate its closed vent systems connected to VRUs to capture and

route all emissions from storage vessels back to a process stream or to a control device, without emissions to atmosphere, because emissions were observed coming out of the PRDs on tank covers and on closed vent systems connected to the VRUs; odors, staining, corrosion, and condensation were observed on the PRDs; or VRU runtime records were not being kept or were incomplete.

142.    For each of the facilities listed in Appendix 5, dating from at least the Inspection Date and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated the requirement in GCP-Oil and Gas Specific Condition A106.C to comply with the hourly and annual emission limits as represented in the Registration Form. Matador's emissions records indicated that VOC, CO, or $NO_x$ emissions were emitted from these facilities in excess of permitted limits.

143.    For each of the facilities listed in Appendix 5, dating from at least the Inspection Date and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated the requirements in GCP-Oil and Gas Specific Condition A207.B to continuously monitor the presence of a flare pilot flame using a thermocouple equipped with a continuous recorder and alarm and to record all instances of alarm activation, actions taken to bring the flare into normal operating conditions, the name of the personnel conducting the inspection, and maintenance activities.

144.    For each of the facilities listed in Appendix 5, dating from at least the Inspection Date and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated the requirement in GCP-Oil and Gas Specific Condition A205.B to perform monthly inspections of its covers and closed vent systems because Matador's OVA inspection records were either incomplete, missing, or failed to reflect the emissions observed by inspectors.

145.     For each of the facilities listed in Appendix 5, dating from at least the Inspection Date, and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated the requirement at GCP-Oil and Gas General Condition B109.A to maintain records to assure and verify compliance with the terms and conditions of the GCP-Oil and Gas because Matador failed to maintain records demonstrating that a pilot flame was continuously present or failed to maintain records demonstrating that the VRUs were running at all times.

146.     By failing to comply with the GCP-Oil and Gas Conditions referenced above, Matador violated the requirement in GCP-Oil and Gas General Condition B101.A to operate the facilities in accordance with all of the conditions of the GCP, including the representations in the Registration Form, at each of the facilities listed in Appendix 5.

147.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Matador is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

148.     Pursuant to Section 74-2-12.1(A) of the AQCA, Matador is liable for civil penalties of up to $15,000 per day for each violation.

**Claim 6: Failure to Comply with Good Air Pollution Control Practices**

149.     Paragraphs 1 through 110 are incorporated herein by reference.

150.     The facilities in Appendix 6 are oil and natural gas production facilities owned and/or operated by Matador in the State of New Mexico subject to the requirements for storage vessel affected facilities in NSPS Subpart OOOOa and/or have been registered and approved by

NMED under the GCP-Oil and Gas Permit.

151. For each of the facilities listed in Appendix 6, dating from at least the Inspection Date and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Matador violated the requirements at 40 C.F.R. § 60.5370a(b), 20.2.7.109 NMAC, and GCP-Oil and Gas General Condition B107.A by failing to maintain and operate its storage vessel affected facilities and associated air pollution control equipment in a manner consistent with good air pollution control practices for minimizing emissions.

152. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Matador is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

153. Pursuant to Section 74-2-12.1(A) of the AQCA, Matador is liable for civil penalties of up to $15,000 per day for each violation.

**PRAYER FOR RELIEF**

WHEREFORE, based on the above allegations, Plaintiffs request that this Court:

A. Permanently enjoin Defendant from further violating the CAA, the AQCA, the regulations implementing those statutes, and all applicable permits;

B. Order Defendant to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA, the AQCA, regulations implementing those statutes, and all applicable permits;

C. Assess a civil penalty against Defendant for each violation of the CAA, its implementing regulations, the New Mexico SIP, and the applicable federally-enforceable

permits of up to $37,500 per day for each violation occurring prior to or on November 2, 2015, and up to $117,468 per day for each violation occurring after November 2, 2015;

       D.      Assess a civil penalty against Defendant for each violation of the AQCA, its implementing regulations, and all applicable state-issued permits of up to $15,000 per day for each violation; and

       E.      Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*Nicole Veilleux*

_____
NICOLE VEILLEUX
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Benjamin Franklin Station
Washington, DC 20044-7611
(202) 616-8746
nicole.veilleux@usdoj.gov
Attorney for Plaintiff United States of America

ALEXANDER M.M. UBALLEZ
United States Attorney

RUTH F. KEEGAN
Assistant United States Attorney
District of New Mexico
P.O. Box 607
Albuquerque, NM 87103
Phone: 505.224.1470
Mobile: 505.206.4197
Fax: 505.346.7296
Ruth.F.Keegan@usdoj.gov

JAMES KENNEY
Cabinet Secretary
New Mexico Environment Department
1190 St. Francis Dr., Suite N4050
Santa Fe, New Mexico 87501
(505) 470-6161
james.kenney@state.nm.us

*Christopher Vigil*
_____
CHRIS VIGIL (NM Bar # 141937)
Special Assistant Attorney General
New Mexico Environment Department
121 Tijeras Ave. NE, Suite 1000
Albuquerque, New Mexico 87102
(505) 469-4696
christopherj.vigil@env.nm.gov
Attorney for Plaintiff New Mexico Environment
Department

OF COUNSEL:

JENNIFER LEE
Attorney-Advisor
Air Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460
(202) 564-5042
lee.jennifer@epa.gov

ALEXANDREA ROLAND
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street
Dallas, TX 75270
(214) 665-2753
roland.alexandrea@epa.gov

| APPENDIX A |
|---|
| **Matador Facility Name** |
| Anne Com 15 Facility |
| B Banker Facility |
| Brantley State Com 13 24 27 RB 205H |
| Charlie Sweeney Facility |
| Coleman Facility |
| Dr. K Facility |
| Dr. Scrivner Facility |
| Garrett Stat Com #111H |
| General Kehoe 02 24S 28E RB 217H |
| Guitar 10 Facility |
| Janie Conner Facility |
| Mallon 27 Fed Com No1H Facility |
| Mallon 27 Fed Com No2H Facility |
| Mallon 27 Fed Com No3H Facility |
| Miss Sue 202H Facility |
| Norris Thornton-1 Facility |
| Stebbins 19 Fed Com No123H Facility |
| Stebbins 20 Fed Facility |
| Stebbins 20/19 Fed Facility |
| Tiger 14 Facility |
| Tom Matthews 223H Facility |
| Tom Walters Facility |
| Tony La Russa State Com #202H |
| Warren Facility |
| Zach McCormick Fed Com 226H Facility |

**TOTAL 25**

| APPENDIX 1 | | | | |
|---|---|---|---|---|
| **Matador Facility Name** | **1A Facilities** | **1B Facilities** | **1C Facilities** | **1D Facilities** |
| Anne Com 15 Facility | X | X | X | X |
| B Banker Facility | X | X | | |
| Brantley State Com 13 24 27 RB 205H | X | | | X |
| Charlie Sweeney Facility | X | X | | |
| Coleman Facility | X | X | | |
| Dr. K Facility | X | X | X | X |
| Dr. Scrivner Facility | X | X | | |
| Garrett Stat Com #111H | X | | | X |
| General Kehoe 02 24S 28E RB 217H | X | | | |
| Guitar 10 Facility | X | X | | |
| Janie Conner Facility | X | X | | |
| Mallon 27 Fed Com No1H Facility | X | X | X | |
| Mallon 27 Fed Com No2H Facility | X | X | X | |
| Mallon 27 Fed Com No3H Facility | X | X | X | |
| Miss Sue 202H Facility | X | X | X | X |
| Stebbins 19 Fed Com No123H Facility | | X | | |
| Stebbins 20 Fed Facility | X | X | | |
| Stebbins 20/19 Fed Facility | X | X | | |
| Tiger 14 Facility | X | X | X | X |
| Tom Matthews 223H Facility | | X | | X |
| Tom Walters Facility | X | X | X | |
| Tony La Russa State Com #202H | X | | | |
| Warren Facility | X | X | | |
| Zach McCormick Fed Com 226H Facility | X | X | X | X |
| | | | | |
| **TOTAL** | **22** | **20** | **9** | **8** |

**APPENDIX 2**

| Matador Facility Name |
| --- |
| Anne Com 15 Facility |
| B Banker Facility |
| Brantley State Com 13 24 27 RB 205H |
| Charlie Sweeney Facility |
| Dr. K Facility |
| Garrett Stat Com #111H |
| Mallon 27 Fed Com No1H Facility |
| Mallon 27 Fed Com No2H Facility |
| Mallon 27 Fed Com No3H Facility |
| Miss Sue 202H Facility |
| Norris Thornton-1 Facility |
| Tiger 14 Facility |
| Tom Matthews 223H Facility |
| Tom Walters Facility |
| Zach McCormick Fed Com 226H Facility |

**TOTAL 15**

**APPENDIX 3**

| Matador Facility Name |
| --- |
| Brantley State Com 13 24 27 RB 205H |
| Charlie Sweeney Facility |
| Coleman Facility |
| Dr. K Facility |
| Dr. Scrivner Facility |
| Garrett Stat Com #111H |
| General Kehoe 02 24S 28E RB 217H |
| Guitar 10 Facility |
| Janie Conner Facility |
| Mallon 27 Fed Com No3H Facility |
| Miss Sue 202H Facility |
| Stebbins 20 Fed Facility |
| Stebbins 20/19 Fed Facility |
| Tiger 14 Facility |
| Tom Matthews 223H Facility |
| Tom Walters Facility |
| Tony La Russa State Com #202H |
| Warren Facility |
| Zach McCormick Fed Com 226H Facility |

**TOTAL 19**

**APPENDIX 4**

| Matador Facility Name |
| --- |
| Anne Com 15 Facility |
| Brantley State Com 13 24 27 RB 205H |
| Dr. K Facility |
| Garrett Stat Com #111H |
| General Kehoe 02 24S 28E RB 217H |
| Janie Conner Facility |
| Mallon 27 Fed Com No1H Facility |
| Mallon 27 Fed Com No2H Facility |
| Mallon 27 Fed Com No3H Facility |
| Tiger 14 Facility |
| Tom Matthews 223H Facility |
| Tom Walters Facility |
| Zach McCormick Fed Com 226H Facility |

**TOTAL 13**

| APPENDIX 5 |
|---|
| **Matador Facility Name** |
| B Banker Facility |
| Charlie Sweeney Facility |
| Coleman Facility |
| Dr. Scrivner Facility |
| Guitar 10 Facility |
| Janie Conner Facility |
| Stebbins 19 Fed Com No123H Facility |
| Stebbins 20 Fed Facility |
| Stebbins 20/19 Fed Facility |
| Warren Facility |

**TOTAL 10**

| APPENDIX 6 |
|---|
| **Matador Facility Name** |
| Anne Com 15 Facility |
| B Banker Facility |
| Brantley State Com 13 24 27 RB 205H |
| Charlie Sweeney Facility |
| Coleman Facility |
| Dr. K Facility |
| Dr. Scrivner Facility |
| Garrett Stat Com #111H |
| General Kehoe 02 24S 28E RB 217H |
| Guitar 10 Facility |
| Janie Conner Facility |
| Mallon 27 Fed Com No1H Facility |
| Mallon 27 Fed Com No2H Facility |
| Mallon 27 Fed Com No3H Facility |
| Miss Sue 202H Facility |
| Stebbins 19 Fed Com No123H Facility |
| Stebbins 20 Fed Facility |
| Stebbins 20/19 Fed Facility |
| Tiger 14 Facility |
| Tom Matthews 223H Facility |
| Tom Walters Facility |
| Tony La Russa State Com #202H |
| Warren Facility |
| Zach McCormick Fed Com 226H Facility |

**TOTAL 24**